**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

COTTRELL, INC.,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
J. NIGEL ELLIS, DYNAMIC⠀⠀⠀)⠀⠀⠀Case No.
SCIENTIFIC CONTROLS, INC., ELLIS⠀)
LADDER IMPROVEMENTS, INC., and⠀)
ELLIS LITIGATION SUPPORT⠀⠀⠀)
SERVICES,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀**JURY DEMANDED**
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀⠀)

## COMPLAINT

Plaintiff, Cottrell, Inc., by and through their attorneys, John J. Bullaro, Jr. and Scott R. Sinson of BULLARO & CARTON, P.C, for its Complaint against Defendants, J. Nigel Ellis, Dynamic Scientific Controls, Inc., Ellis Ladder Improvements, Inc., and Ellis Litigation Support Services ("Defendants"), states as follows:

## THE PARTIES

1.⠀⠀⠀Plaintiff, Cottrell, Inc. is a Georgia corporation, organized and existing under the laws of the State of Georgia with its principal place of business in Gainesville, Georgia. Cottrell is engaged in the business of designing, manufacturing and selling auto transport rigs.

2.⠀⠀⠀Defendant, Nigel Ellis ("Nigel Ellis" or "Ellis"), is a citizen of the state of Delaware, and is the sole shareholder, owner, partner, member and/or owner of Dynamic Scientific Controls, Inc., Ellis Ladder Improvements, Inc., and Ellis Litigation Support Services (collectively the "Nigel Ellis Companies").. For all the Nigel Ellis Companies, defendant Nigel Ellis was acting in the course and scope of his duties for the Nigel Ellis Companies such that

when defendant Nigel Ellis is referred to individually, the allegations apply to the Nigel Ellis Companies.

3.      Defendant, Dynamic Scientific Controls, Inc., is a Delaware corporation, organized and existing under the laws of the State of Delaware with its principal place of business in Wilmington, Delaware.

4.      Defendant, Ellis Ladder Improvements, Inc, is a Delaware corporation, organized and existing under the laws of the State of Delaware with its principal place of business in Wilmington, Delaware.

5.      Defendant, Ellis Litigation Support Services, is an entity organized and existing under the laws of the State of Delaware, with its principal place of business in Wilmington, Delaware.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction as there is complete diversity of citizenship between Cottrell and Defendants, and the amount in controversy exceeds $75,000.

7.      Venue is proper in the Northern District of Illinois, as a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred

## FACTS COMMON TO ALL COUNTS

8.      Defendant Nigel Ellis is a litigation expert providing services to parties in litigation, as well as a seller of certain products as a safety engineer.

9.      Defendant Nigel Ellis is the sole shareholder, owner, partner, member and/or owner of Dynamic Scientific Controls, Inc., Ellis Ladder Improvements, Inc., and/or Ellis Litigation Support Services.

10.    In *Assaf v. Cottrell* in the United States District Court for the Northern District of Illinois, Chief Judge Holderman disqualified Defendant Nigel Ellis based on the conduct set forth herein, after stating on July 28, 2011, "I have never run across this in the 40 years I've being doing this stuff."

11.    On August 16, 2011, Chief Judge Holderman stated: "I believe it is appropriate to disqualify him. I certainly understand plaintiff's counsel's position to desire to withdraw him, because there is no appropriate basis on which he can serve as plaintiff's expert," and the Court then ordered the plaintiffs to pay $17,850 as sanction to Cottrell.

## The Initial Inquiry, Representations and Reliance By Cottrell

12.    Defendant Nigel Ellis approached Cottrell in August 2005 as a safety professional and member of the American Society of Safety Engineers ("ASSE"), purportedly in an attempt to sell Cottrell a fall protection design Defendant Nigel Ellis had developed. At all times described herein, Defendant Nigel Ellis was acting as a safety engineer and pursuant to the duties he voluntarily assumed to Cottrell and others via membership in the ASSE and other engineering associations.

13.    Cottrell agreed to consult with Nigel Ellis pursuant to certain conditions.

14.    As a prerequisite to agreeing to discussions with Defendant Nigel Ellis, Cottrell inquired, via its head engineer, Bryan Howes, whether Defendant Nigel Ellis was working with any plaintiffs' attorneys against Cottrell. Cottrell inquired, although Nigel Ellis' voluntarily assumed duties and code of conduct would have prevented him from such a conflict. Cottrell advised Nigel Ellis that, if he were so consulting, Cottrell would not further communicate with him. Ellis assured Cottrell he was not working with any such plaintiffs' attorneys against Cottrell,

and Cottrell continued to communicate with him in reliance on his representations and other duties owed to Cottrell.

15.     Cottrell relied upon Defendant Nigel Ellis' representation regarding his not working with plaintiffs' attorneys against Cottrell and relied on him complying with his voluntarily assumed duties and codes of conduct as a safety engineer. Ellis then insisted that Cottrell execute a confidentiality agreement before sharing information pertaining to his fall protection design.

16.     Cottrell and Ellis executed a confidentially agreement based upon Ellis' representations.

17.     In or around November 2005, after the confidentiality agreement was executed, Defendant Nigel Ellis sent his design drawings to Cottrell and began communicating with Cottrell or attempting to communicate with Cottrell and documenting same from late 2005 through May 2007.

### Nigel Ellis' Letters and Communications with Cottrell

18.     Allegedly as part of his sales and consultation services, Defendant Nigel Ellis sent unsolicited letters to Cottrell from December 2005 through March 2007. The alleged purpose was Nigel Ellis attempting to sell Cottrell his invention for fall protection, although Nigel Ellis now uses those letters as evidence against Cottrell.

19.     In these letters, Defendant Nigel Ellis touted his design and used litigation terms such as it was "his opinion to a reasonable degree of safety certainty" that his product would be accepted. Defendant Nigel Ellis also referenced potential "$20 million" verdicts against Cottrell if it did not change its product.

4

20.     After discussions in which Cottrell expressed its concerns regarding certain aspects of Nigel Ellis' design, on May 21, 2006, Defendant Nigel Ellis sent a letter to Cottrell promising he would send additional photographs and measurements to address Cottrell's concerns as to the feasibility of the use of his invention on its products.

21.     Defendant Nigel Ellis never sent the photographs and measurements referenced in his May 21, 2006 correspondence, and ceased communicating with Cottrell, at that time, until March 2007.

## The Secret Communications of Ellis with Plaintiffs' Counsel and OSHA

22.     Cottrell discovered in 2011, that at least as early as July 2006, while Defendant Nigel Ellis' promises in his May 21, 2006 letter remained outstanding and while Nigel Ellis still considered his relationship with Cottrell ongoing, that he began secretly communicating with Brian Wendler, a plaintiffs' attorney who has repeatedly sued Cottrell for more than a decade.

23.     Defendant Nigel Ellis secretly communicated with Brian Wendler from at least July 2006 through July 2007 without informing Cottrell of such communications.

24.     Cottrell also discovered that Nigel Ellis had been communicating with OSHA in 2006 and 2007 in matters adverse to Cottrell trailers without informing Cottrell of such communications and retention when Nigel Ellis communicated with Cottrell thereafter.

## The Retention of Ellis by Brian Wendler and OSHA

25.     Cottrell discovered in 2011 that Defendant Nigel Ellis was retained as an expert consultant by Brian Wendler in January 2007, after consulting with Mr. Wendler for more than six months.

26.     Defendant Nigel Ellis, despite promising to Cottrell that he was not working with any plaintiffs' attorneys against Cottrell while communicating about his design and despite his

voluntarily assumed duties under various codes of conduct, did not inform Cottrell of his communications with Brian Wendler or his prior retention by him. Defendant Nigel Ellis then continued to communicate with Cottrell after his retention by Wendler but without mentioning his earlier communications or retention.

27.     In 2006, at or around the time Nigel Ellis was communicating with Cottrell, Nigel Ellis was communicating with and was ultimately retained by OSHA in 2006 or 2007 to support citations it issued involving Cottrell trailers. The citations, which were later dismissed, alleged that the Cottrell rigs created an unsafe workplace condition under OSHA due to fall safety issues.

28.     Nigel Ellis did not inform Cottrell in his subsequent communications with Cottrell in 2007 that he was communicating with OSHA in matters adverse to Cottrell trailers and was retained by OSHA in matters adverse to Cottrell trailers before such communications.

### Nigel Ellis' Ex Parte Communications with Cottrell After Retention by Wendler and OSHA

29.     After being officially retained by Brian Wendler and OSHA, Defendant Nigel Ellis continued communicating with Cottrell on or about March 1, 2007, via a letter to Cottrell's Chairman, Leland Bull, that was styled as an "update."

30.     Defendant Nigel Ellis continued to attempt to communicate with Cottrell through May 2007 as a safety engineering professional.

31.     In none of those communications, despite a duty to do so under various codes of conduct and other duties, did Nigel Ellis inform Cottrell of his retention by plaintiffs' counsel Brian Wendler, or of his earlier communications with Wendler, or of his retention by OSHA or of his earlier communications with OSHA adverse to Cottrell rigs.

### The First Disclosure of Nigel Ellis by Brian Wendler in July 2007

32.    Brian Wendler disclosed Defendant Nigel Ellis as an expert witness under FRCP Rule 26 to testify against Cottrell in July 2007 in a case called Hancox v. Cottrell.

33.    In the case where Defendant Nigel Ellis was disclosed as an expert against Cottrell, and in other subsequent cases, Defendant Nigel Ellis and various plaintiffs' attorneys have relied upon Defendant Nigel Ellis' communications and letters to Cottrell to support Ellis' opinions, and plaintiffs' claims of liability and punitive damages against Cottrell.

### Defendant Nigel Ellis' First Deposition by Cottrell in 2010 and False Testimony Regarding Communications with Brian Wendler

34.    Defendant Nigel Ellis first testified in a Cottrell case in deposition in Smith v. Cottrell in August 2010.

35.    In his August 2010 testimony, Defendant Nigel Ellis testified that his first communication with Brian Wendler was in 2007.    Cottrell later discovered that the first communication with Mr. Wendler was approximately six months earlier, at least as early as July 2006, merely weeks after Ellis' May 21, 2006 letter to Cottrell promising follow up.

36.    In his August 2010 testimony, Defendant Nigel Ellis also testified that he brought all responsive documents to certain requests on Plaintiff's Notice of Deposition, including the documents showing the date of his first communication ever with Brian Wendler.    He did not produce such responsive documents at the deposition.

37.    In his August 2010 testimony, Defendant Nigel Ellis agreed to using "typical" and "purely litigation" phrasing in his prior correspondence to Cottrell.    He testified, when asked if he could see how someone might think he was trying to set up Cottrell, "I see that phrase is in there."

38.    In his August 2010 testimony, Defendant Nigel Ellis testified that Cottrell "seemed price conscious" and implied that Cottrell valued cost over safety, based on his communications with Mr. Howes of Cottrell.

39.    Nigel Ellis also testified on August 21, 2010 that he was retained by OSHA "one to two years" ago, which would have placed it from August 21, 2008 to August 21, 2009. He testified it was in "2008 or 2009." He was actually retained by OSHA in late 2006 or January 2007 regarding car haulers.

40.    In April 2011, in a case not involving Brian Wendler, the plaintiffs' counsel and Defendant Nigel Ellis (who was disclosed there as an expert) produced certain documents not previously produced that showed the date of Ellis' retention by Brian Wendler.

41.    In an in-camera review by the Court, the documents also showed - for the first time -- that Defendant Nigel Ellis communicated with Brian Wendler as early as July 2006, just weeks after his May 21, 2006 letter to Cottrell, and eight months before his March 1, 2007 letter to Cottrell.

42.    In his May 2011 testimony, Defendant Nigel Ellis initially testified that he never communicated with Cottrell after his retention by plaintiffs' counsel Brian Wendler, but admitted to such communication after the March 1, 2007 letter was presented to him.

43.    In his May 2011 testimony, Defendant Nigel Ellis initially testified that he did not agree to work with Brian Wendler until after Nigel Ellis had made the decision that Cottrell was not interested in his product, but later testified that the reason he communicated with Cottrell on March 1, 2007 was to inquire as to its continued interest in his product. This was after he was retained by Mr. Wendler and OSHA in matters adverse to Cottrell.

44.     Defendant Nigel Ellis testified that he was utilizing his prior communications with Cottrell to support his opinions against Cottrell.

45.     The documents Defendant Nigel Ellis produced in the case where the May 2011 testimony was given included Ellis' notes of meetings with other plaintiffs' attorneys considering and ultimately retaining him as an expert against Cottrell.     These notes demonstrate that Defendant Nigel Ellis was touting his communications with Cottrell to support those attorneys' claims of punitive damages against Cottrell.

### The Revelation of the Conduct

46.     In May 2011, in a case against Cottrell called *Assaf v. Cottrell*, Defendant Nigel Ellis was deposed after being disclosed by another plaintiffs' expert.  There, Defendant Nigel Ellis (and that plaintiff's counsel), in response to the same document requests propounded in the Brian Wendler cases, produced various documents not previously produced.

47.     The documents produced in the *Assaf* case, unlike in the Brian Wendler cases, included a January 14, 2007 memorandum from Defendant Nigel Ellis to the file, stating he had been hired by Brian Wendler at the time.

48.     Without the January 2007 memorandum, Cottrell did not know Defendant Nigel Ellis had been communicating ex parte with Cottrell after his retention by plaintiffs' counsel. The January 14, 2007 memo was not produced to Cottrell in any Brian Wendler cases.

49.     The documents produced in *Assaf* case also included a letter from Defendant Nigel Ellis to Brian Wendler referencing a "general agreement" dated January 7, 2007. This was never produced to Cottrell in the Brian Wendler cases or ever.

### The Disqualification of Defendant Nigel Ellis

50.     Defendant Nigel Ellis was disqualified as an expert in *Assaf v. Cottrell* by Chief Judge Holderman in the United States District Court for the Northern District of Illinois due to the conflict of interest with Cottrell.

51.     Cottrell was awarded $18,000 in attorneys' fees in *Assaf v. Cottrell* as a result of the conflict of interest and attorneys' fees incurred in addressing it.

### The Continued Conduct after Disqualification

52.     Defendant Nigel Ellis, rather than withdraw as an expert against Cottrell after the conflict of interest was revealed, continues to serve as an expert, relying on his unsolicited letters and communications with Cottrell to support his opinions.    These unsolicited letters and communications continue to be used by plaintiffs' attorneys to Cottrell's detriment.

### COUNT I: BREACH OF CONTRACT

53.     Cottrell reincorporates by reference the preceding paragraphs of its Complaint, as if fully set forth herein, and for its Count I against all Defendants, states:

54.     In or around August 2005, Nigel Ellis approached Cottrell about a safety-design improvement that he was attempting to sell Cottrell.

55.     Nigel Ellis offered to share his designs and meet with Cottrell in exchange for Cottrell's agreement not to disclose his designs.    Cottrell agreed to sign a confidentiality agreement not to share Nigel Ellis' designs and to meet with Nigel Ellis, as long as Nigel Ellis confirmed that he was not working with any plaintiffs' counsel against Cottrell, and implicit was the agreement that he would not work with any such plaintiffs' counsel or others adverse to Cottrell while communications with Cottrell were ongoing, in compliance with his voluntarily assumed duties under the codes of conduct of various professional associations or societies.

56.     Nigel Ellis and Cottrell accepted each others' offers.

57.     Nigel Ellis breached his promise not to work with any plaintiffs' attorneys during his communications with Cottrell by secretly communicating with Brian Wendler while his communications with Cottrell were intended to be ongoing, as shown by Nigel Ellis' communications to Cottrell after Nigel Ellis was retained by Mr. Wendler and breached his promise by using his communications with Cottrell against Cottrell via his work for plaintiff's attorneys.

58.     Cottrell was damaged as a direct and proximate result of Nigel Ellis' conduct in that (a) Cottrell wrongly incurred expert fees and related costs and expenses; (b) wrongly incurred deposition fees that it paid to Ellis for his deposition time; and (c) suffered damage to its business reputation.

WHEREFORE, Plaintiff, Cottrell, Inc., states that it has been damaged in excess of One Million Dollars ($1,000,000.00) for which it prays judgment against Defendants, Nigel Ellis, Dynamic Scientific Controls, Inc., Ellis Ladder Improvements, Inc., and Ellis Litigation Support Services, the imposition of punitive damages, for its costs incurred herein, and for any such other and further relief as this Court deems just and proper.

## COUNT II: FRAUDULENT MISREPRESENTATION AND OMISSIONS

### (Ellis' Promise that He Was Not and Would Not Work With Those Adverse to Cottrell)

59.     Cottrell reincorporates by reference the preceding paragraphs of its Complaint, as if fully set forth herein, and for Count II against all Defendants, states:

60.     Nigel Ellis represented to Cottrell when he approached Cottrell in 2005 about selling his fall-safety design that he was not working with any plaintiffs' attorneys against

Cottrell and acknowledged Cottrell's concerns about communicating with him if he were working with any plaintiffs' attorneys or those adverse to Cottrell.

61.    In reliance on Nigel Ellis' representations and duties as a safety professional, Cottrell agreed to communicate with Nigel Ellis and did in fact communicate with Nigel Ellis, reasonably relying that Nigel Ellis would not communicate with those adverse to Cottrell or use his communications with Cottrell against Cottrell.

62.    During Nigel Ellis' communications with Cottrell, Ellis began communicating with plaintiffs' counsel, Brian Wendler and with OSHA in 2006 and 2007 in matters that Nigel Ellis knew were adverse to Cottrell, and intentionally did not disclose same to Cottrell in his subsequent communications to Cottrell, stating: "No, I didn't want to raise the issue with Mr. Bull of -- of lawsuits and of course if there had been any conflict I would have backed out of any -- any lawsuit agreement with Brian Wendler or anybody else."

63.    Nigel Ellis intentionally failed to disclose and concealed the fact of his communications with, and retention by, Brian Wendler and OSHA, although Nigel Ellis had a duty to disclose this fact during his communications with Cottrell, including in his March 1, 2007 correspondence and additional communications through May 2007 and thereafter, and did so intending that Cottrell would rely on his omissions.

64.    Cottrell reasonably relied on Nigel Ellis' intentional failure to disclose his retention by Brian Wendler and OSHA in (a) paying expert fees and related costs and expenses to rebut Ellis' opinions; and (b) paying deposition fees to Ellis before it knew of the conduct.

65.    Nigel Ellis subsequently actively concealed from Cottrell the date of his retention and communications with Brian Wendler by failing to provide, despite valid requests, the documentary proof of his retention and proof of his 2006 communications with Brian Wendler,

and in testifying that the date of their first communication was in 2007, when in actuality it was 2006.

66.     Cottrell reasonably relied on Nigel Ellis' failure to disclose, and his concealment of, his retention by Brian Wendler and OSHA in (a) paying expert fees and related costs and expenses to rebut Ellis' opinions and (c) paying deposition fees to Ellis before it knew of the conduct.

67.     Cottrell was damaged as a direct and proximate result of Nigel Ellis' conduct in that (a) Cottrell wrongly incurred expert fees and related costs and expenses; (b) wrongly incurred deposition fees that it paid to Ellis for his deposition time; and (c) suffered damage to its business reputation.

WHEREFORE, Plaintiff, Cottrell, Inc., states that it has been damaged in excess of One Million Dollars ($1,000,000.00) for which it prays judgment against Defendants, Nigel Ellis, Dynamic Scientific Controls, Inc., Ellis Ladder Improvements, Inc., and Ellis Litigation Support Services, the imposition of punitive damages, for its costs incurred herein, and for any such other and further relief as this Court deems just and proper.

## COUNT III: NEGLIGENT MISREPRESENTATION

### (Ellis' Promise that He Was Not and Would Not Work With Those Adverse to Cottrell)

68.     Cottrell reincorporates by reference the preceding paragraphs of its Complaint, as if fully set forth herein, and for Count III against all Defendants, states:

69.     Nigel Ellis represented to Cottrell when he approached Cottrell in 2005 about selling his fall-safety design that he was not working with any plaintiffs' attorneys against Cottrell and acknowledged Cottrell's concerns about communicating with him if he were working with any plaintiffs' attorneys.

70. In reliance on Nigel Ellis' representations and duties as a safety professional, Cottrell agreed to communicate with Nigel Ellis and did in fact communicate with Nigel Ellis, reasonably relying that Nigel Ellis would not communicate with those adverse to Cottrell or use his communications with Cottrell against Cottrell.

71. During Nigel Ellis' communications with Cottrell, Ellis began communicating with plaintiffs' counsel, Brian Wendler and with OSHA in 2006 and 2007 in matters that Nigel Ellis knew were adverse to Cottrell, and negligently did not disclose same to Cottrell, despite a duty to do so, stating: "No, I didn't want to raise the issue with Mr. Bull of -- of lawsuits and of course if there had been any conflict I would have backed out of any -- any lawsuit agreement with Brian Wendler or anybody else."

72. Nigel Ellis negligently failed to disclose and concealed the fact of his communications with, and retention by, Brian Wendler and OSHA, although Nigel Ellis had a duty to disclose this fact during his communications with Cottrell, including in his March 1, 2007 correspondence and additional communications through May 2007 and thereafter, and did so when he should have known that Cottrell would rely on his omissions.

73. Cottrell reasonably relied on Nigel Ellis' negligent failure to disclose his retention by Brian Wendler and OSHA in (a) paying expert fees and related costs and expenses to rebut Ellis' opinions and (c) paying deposition fees to Ellis before it knew of the conduct.

74. Nigel Ellis subsequently concealed from Cottrell the date of his retention and communications with Brian Wendler by failing to provide, despite valid requests, the documentary proof of his retention and proof of his 2006 communications with Brian Wendler, and in testifying that the date of their first communication was in 2007, when in actuality it was 2006.

75. Cottrell reasonably relied on Nigel Ellis' failure to disclose, and his concealment of, his retention by Brian Wendler and OSHA in (a) paying expert fees and related costs and expenses to rebut Ellis' opinions and (c) paying deposition fees to Ellis before it knew of the conduct.

76. Cottrell was damaged as a direct and proximate result of Nigel Ellis' conduct in that (a) Cottrell wrongly incurred expert fees and related costs and expenses; (b) wrongly incurred deposition fees that it paid to Ellis for his deposition time; and (c) suffered damage to its business reputation.

WHEREFORE, Plaintiff, Cottrell, Inc., states that it has been damaged in excess of One Million Dollars ($1,000,000.00) for which it prays judgment against Defendants, Nigel Ellis, Dynamic Scientific Controls, Inc., Ellis Ladder Improvements, Inc., and Ellis Litigation Support Services, the imposition of punitive damages, for its costs incurred herein, and for any such other and further relief as this Court deems just and proper.

## COUNT IV: FRAUD VIA OMISSION

### (Intentional Failure to Disclose Nigel Ellis' Retention by Brian Wendler and OSHA)

77. Cottrell reincorporates by reference the preceding paragraphs of its Complaint, as if fully set forth herein, and for Count IV against all Defendants, states:

78. Nigel Ellis owed Cottrell a duty to disclose to Cottrell the fact that he had been retained by Brian Wendler and OSHA when Nigel Ellis chose to communicate with Cottrell on March 1, 2007 and thereafter, after his retention by Brian Wendler and OSHA.

79. Nigel Ellis intentionally failed to disclose and concealed the fact of his retention by Brian Wendler although Nigel Ellis had a duty to disclose this fact and did so intending that Cottrell would rely on his omissions.

80. Cottrell reasonably relied on Nigel Ellis' failure to disclose and concealment of the fact of his retention by Brian Wendler and OSHA in (a) paying expert fees and related costs and expenses to rebut Ellis' opinions and (b) paying deposition fees to Ellis before it knew of the conduct.

81. Cottrell was damaged as a direct and proximate result of Nigel Ellis' conduct in that (a) Cottrell wrongly incurred expert fees and related costs and expenses; (b) wrongly incurred deposition fees that it paid to Ellis for his deposition time; and (c) suffered damage to its business reputation.

## COUNT V: NEGLIGENCE

**(Breach of Duty Not to Engage in Conflict of Interests and Failure to Disclose to Cottrell Nigel Ellis' Retention by Brian Wendler and OSHA)**

82. Cottrell reincorporates by reference the preceding paragraphs of its Complaint, as if fully set forth herein, and for Count V against all Defendants, states:

83. Nigel Ellis owed Cottrell a duty not to engage in conflict of interest or the appearance of conflict of interest by communicating with Brian Wendler or OSHA in matters adverse to Cottrell while he communicated with Cottrell as a safety professional or engineer, in using his communications with Cottrell against Cottrell, and owed Cottrell a duty to disclose to Cottrell the fact that he had been retained by Brian Wendler and OSHA when Nigel Ellis chose to communicate with Cottrell after his retention by Brian Wendler and OSHA.

84. Nigel Ellis negligently and carelessly breached the above duties to Cottrell.

85. Cottrell was damaged as a direct and proximate result of Nigel Ellis' conduct in that (a) Cottrell wrongly incurred expert fees and related costs and expenses; (b) wrongly incurred deposition fees that it paid to Ellis for his deposition time; and (c) suffered damage to its business reputation.

WHEREFORE, Plaintiff, Cottrell, Inc., states that it has been damaged in excess of One Million Dollars ($1,000,000.00) for which it prays judgment against Defendants, Nigel Ellis, Dynamic Scientific Controls, Inc., Ellis Ladder Improvements, Inc., and Ellis Litigation Support Services, the imposition of punitive damages, for its costs incurred herein, and for any such other and further relief as this Court deems just and proper.

## COUNT VI: NEGLIGENCE OR NEGLIGENCE PER SE

### (Breach of Voluntarily Assumed Duties Under Codes of Professional Conduct)

86.     Cottrell reincorporates by reference the preceding paragraphs of its Complaint, as if fully set forth herein, and for Count VI against all Defendants, states:

87.     Nigel Ellis owed Cottrell a duty to comply with the ethical codes applicable to his profession as a safety engineer and professional engineer and member of the American Society of Safety Engineers ("ASSE") and other organizations.

88.     Under the 2002 ASSE Code of Professional Conduct Fundamental Principles, a safety engineer must, "Avoid conflicts of interest and compromise of professional conduct,"

89.     Under the 2002 ASSE Code of Professional Conduct Fundamental Canons, a safety engineer must, "Serve as an agent and trustee, avoiding any appearance of conflict of interest."

90.     Under the 2012 ASSE Code of Professional Conduct, members shall:  "Avoid situations that create actual, potential or perceived conflicts between personal and professional interests, and if a potential conflict of interest arises disclose all applicable facts to potentially affected parties."

91.     Nigel Ellis breached his duty to Cottrell to comply with the ethical code applicable to his profession as safety engineer and professional engineer in that (a) he secretly

communicated with Brian Wendler and OSHA while he had outstanding promises and commitments to Cottrell via a May 21, 2006 letter and during what he considered an ongoing relationship with Cottrell as evidenced by Nigel Ellis' March 1, 2007 letter to Cottrell; (b) he secretly communicated with OSHA in matters adverse to Cottrell trailers while he had outstanding promises and commitments to Cottrell via a May 21, 2006 letter as evidenced by Nigel Ellis January 2007 retention by OSHA; (c) Nigel Ellis communicated ex parte with Cottrell, without informing it of his retention or communications by Brian Wendler, after his retention by Brian Wendler adverse to Cottrell and retention by OSHA adverse to Cottrell; (d) promised to Cottrell that he would not work with any plaintiff's counsel while consulting with Cottrell but secretly did; and (e) even after these conflicts were revealed, Nigel Ellis continues to serve as an expert against Cottrell to this day, in violation of the 2012 ASSE Code's obligation to "Avoid situations that create actual, potential or perceived conflicts between personal and professional interests, and if a potential conflict of interest arises disclose all applicable facts to potentially affected parties."

92.     Cottrell was damaged as a direct and proximate result of Nigel Ellis' conduct in that (a) Cottrell wrongly incurred expert fees and related costs and expenses; (b) wrongly incurred deposition fees that it paid to Ellis for his deposition time; and (c) suffered damage to its business reputation.

WHEREFORE, Plaintiff, Cottrell, Inc., states that it has been damaged in excess of One Million Dollars ($1,000,000.00) for which it prays judgment against Defendants, Nigel Ellis, Dynamic Scientific Controls, Inc., Ellis Ladder Improvements, Inc., and Ellis Litigation Support Services, the imposition of punitive damages, for its costs incurred herein, and for any such other and further relief as this Court deems just and proper.

## COUNT VII: VIOLATION OF DECEPTIVE OR UNFAIR PRACTICES ACT, O.C.G.A. 10-1-399

93.     Cottrell reincorporates by reference the preceding paragraphs of its Complaint, as if fully set forth herein, and for its Count VII against all defendants, states:

94.     Defendant Nigel Ellis is engaged in trade or commerce in that he solicits himself as a litigation expert who provides services to parties in litigation and because he is the sole shareholder, owner, partner, member and/or owner of Dynamic Scientific Controls, Ellis Ladder Improvements, Inc., and Ellis Litigation Support Services.

95.     Defendant Nigel Ellis has committed unfair or deceptive acts or practices in the conduct of that trade or commerce by making false statements and/or omissions in the face of a duty to disclose certain facts to Cottrell with regard to working and communicating with those adverse to Cottrell, and directed such conduct toward Cottrell in the state of Georgia.

96.     Defendant Nigel Ellis intended that Cottrell rely upon his false statements and/or omissions in order to induce and continue communications with Cottrell, and in order to develop, manufacture, and solicit evidence to be used against Cottrell in the event it did not purchase his design.

97.     Defendant Nigel Ellis' deception occurred in the context of the purported sale of professional services or products to Cottrell, and, therefore, occurred in the course of conduct involving trade or commerce.

98.     At the time of Defendant Nigel Ellis' unfair or deceptive acts or practices, and at all times herein mentioned, Defendants Dynamic Scientific Controls, Inc., Ellis Ladder Improvements, Inc., and Ellis Litigation Support Services, by and through Defendant Nigel Ellis, were engaged in trade or commerce through the solicitation of fall protection services and sales and each of the said Defendants is therefore liable for the actions of Defendant Nigel Ellis.

99. Cottrell was damaged as a direct and proximate result of Nigel Ellis' conduct in that (a) Cottrell wrongly incurred expert fees and related costs and expenses; (b) wrongly incurred deposition fees that it paid to Ellis for his deposition time; and (c) suffered damage to its business reputation.

WHEREFORE, Plaintiff, Cottrell, Inc., states that it has been damaged in excess of One Million Dollars ($1,000,000.00) for which it prays judgment against Defendants, J. Nigel Ellis, Dynamic Scientific Controls, Inc., Ellis Ladder Improvements, Inc., and Ellis Litigation Support Services, the imposition of punitive damages, for its attorneys' fees and costs incurred herein, for statutory treble damages and for any such other and further relief as this Court deems just and proper.

## COUNT VIII: CIVIL CONSPIRACY

100. Cottrell reincorporates by reference the preceding paragraphs of its Complaint, as if fully set forth herein, and for its Count VIII, states:

101. Defendant Nigel Ellis and attorney Brian Wendler, in combination, agreed to participate in unlawful acts, or lawful acts in an unlawful manner, as further described herein.

102. Defendant Nigel Ellis committed an overt act in furtherance of this common scheme by continuing to communicate with and solicit his fall protection design to Cottrell, among other things, in an attempt to manufacture evidence upon which to base his opinions and to solicit other plaintiffs' attorneys.

103. At the time of Defendant Nigel Ellis' conspiratorial conduct, and at all times herein mentioned, Defendant Nigel Ellis was acting in the course and scope of his employment with Defendants Dynamic Scientific Controls, Inc., Ellis Ladder Improvements, Inc., and Ellis

Litigation Support Services, as the sole shareholder, owner, partner, and/or member, and each of the said Defendants is therefore liable for the actions of Defendant Nigel Ellis.

104.    Cottrell was damaged as a direct and proximate result of Nigel Ellis' conduct in that (a) Cottrell wrongly incurred expert fees and related costs and expenses; (b) wrongly incurred deposition fees that it paid to Ellis for his deposition time; and (c) suffered damage to its business reputation.

WHEREFORE, Plaintiff, Cottrell, Inc., states that it has been damaged in excess of One Million Dollars ($1,000,000.00) for which it prays judgment against Defendants, J. Nigel Ellis, Dynamic Scientific Controls, Inc., Ellis Ladder Improvements, Inc., and Ellis Litigation Support Services, the imposition of punitive damages, for its costs incurred herein, and for any such other and further relief as this Court deems just and proper.

Respectfully submitted,

BULLARO & CARTON, P.C.

By:___ /s/John J. Bullaro, Jr._____
        John J. Bullaro, Jr.

John J. Bullaro, Jr.
Scott R. Sinson
BULLARO & CARTON, P.C.
200 North LaSalle Street
Suite #2420
Chicago, Illinois 60601
Phone: (312) 831-1000
Fax:    (312) 831-0647
Email: jbullaro@bullarocarton.com
        ssinson@bullarocarton.com